### HANNAH CURRIE v. LUTHER MENDENHALL.

June 29, 1899.

Nos. 11,643—(149).

#### Personal Injury—Street Car—Negligence.

> Plaintiff, a street-car passenger, signaled for the car to stop so that she might alight, and as it commenced slowing up she went upon the lowest step of the car, and stood there for a moment, while the car was slowly moving, holding on to the car rail to steady and protect her from falling, when the car, before stopping, started forward with a jerk, and threw her to the ground, whereby she sustained personal injuries. *Held*, that the defendant's negligence and the plaintiff's contributory negligence were questions for the jury. Saiko v. St. Paul City Ry. Co., 67 Minn. 8, distinguished.

Action in the municipal court of Duluth against defendant as receiver of the Duluth Street Railway Company to recover $500 damages for personal injuries. The case was tried before Edson, J., and a jury, which rendered a verdict in favor of plaintiff for $333; and from a judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Thomas S. Wood,* for appellant.

*Jno. Jenswold, Jr.,* for respondent.

BUCK, J.[1]

The plaintiff claims to have sustained personal injuries by reason of the negligence of the defendant in operating its car while plaintiff was a passenger thereon.

In her complaint she alleges that she paid her car fare, and notified the conductor to let her off at Forty-Fifth avenue, but that

[1] MITCHELL, J., absent.

said defendant carelessly and negligently failed to stop the car at said avenue, but carried plaintiff by the same to Forty-Fourth avenue west, at which place the conductor slowed up said car, and was in the act of stopping the same for the purpose of letting her off thereat, when plaintiff left her seat, and proceeded to the rear platform of said car, to there step off upon the stopping of said car; and that while plaintiff, as aforesaid, was upon the said platform, the defendant did wilfully, and in a grossly careless and negligent manner, fail and refuse to stop said car, and he did in like manner fail and refuse to give her any assistance, or sufficient time to alight from said car, and he did in like manner suddenly start the same and increase its speed with such a jerk that plaintiff was thereby thrown off from said platform, and caused to fall, and strike her head, shoulder, and hip upon the street, and in so falling to sustain the injuries therein complained of. She also alleges in her complaint that, as the direct result of said fall, she was greatly injured, and damaged in the sum of $500. On trial the jury awarded her $333 damages. Upon a settled case the defendant moved for judgment in its favor notwithstanding the verdict, and that, if said motion was not granted, then that it be granted a new trial. The court denied the motion, and defendant appeals.

Plaintiff testified that after she entered the car she handed the conductor her fare, and told him that she wanted to get off at Forty-Fifth avenue, and that the conductor repeated after her the word "Forty-Fifth," and proceeded to take up the fares, starting from the front end of the car; that the car was full of people talking and laughing; that the car did not stop at Forty-Fifth avenue as requested, but carried her past her home; that thereupon she motioned to the conductor with her hand, in the usual way, to stop; that the conductor looked right at her, and rang the bell to stop the car at the next block, when the car began to slow up; that thereupon she arose from her seat, two seats from the rear door, went to the door, got down on the steps, and, with her right hand holding to the rail on the side, waited a moment, thinking the car would stop still, when all at once the car jerked away, and knocked her on the street, whereby she was seriously injured. She further testified that when she stood upon the platform step the car was barely

moving, and she thought it was going to stop still. Against this testimony is that of several witnesses, who directly contradicted her as to the ringing of the bell, the speed of the car, and the manner in which she left the car; they testifying that she walked right off the car into the street while the car was going at the rate of seven or eight miles an hour.

The weight of the testimony was on the side of the defendant, but there was nothing unreasonable in the testimony of the plaintiff, or that rendered it inherently improbable, and we are of the opinion that the case is one for, and was properly submitted to, the consideration and determination of the jury, unless upon her own uncorroborated testimony it conclusively appears that she was guilty of such contributory negligence as bars her from maintaining this action. Assuming that her own testimony was true, as the jury by its verdict found in her favor, was it negligence per se for her, after the conductor had, at her request, rung the bell for the car to stop for her to get off, to go and stand for a moment upon the step of the rear platform, with her right hand holding to the rail of a slowly-moving street car, when she believed, and had good reason to believe, that the car was about to stop for her to get off, and especially as she had previously notified the conductor that she wished to get off at Forty-Fifth avenue?

There is no question raised as to any injury or act of negligence while she was going from her seat to the step upon the platform while the car was slowing up. The negligence claimed by plaintiff is that, after she had proceeded to the platform, and descended to the lowest step, and while standing there for a moment, waiting for the car to stop, it was suddenly jerked by the negligent act of the defendant's servant in charge of the car, whereby she was thrown to the ground, and seriously injured. We must keep in mind the fact that she had made known to the conductor her destination, and had given a signal for the car to stop, and that after he had rung the bell for it to do so, and it was slowing up, she proceeded to this step, and waited there for a moment for it to stop. The ringing of the bell and slowing up of the car were notice that the car would stop, and that she would have time enough thereafter to get off the car. Up to the time when she stepped upon

the lower step, it cannot be said that either party was lacking in due care. But the conductor had authority to accelerate or slacken its speed, or stop its running at all, and it was his conduct that came to plaintiff to influence or induce her to go to the car step, where she was standing, expecting the car to stop, when the defendant's negligent act in suddenly starting the car caused the injury. It was the controlling circumstances in the case that made it one peculiarly within the province of the jury to say whether there was a failure on the part of plaintiff to exercise ordinary care and prudence in what she did.

Conductors of street cars are presumed to be experienced men in their occupation, and of practical judgment in operating their cars, and passengers are frequently influenced by their acts in getting off the cars. How far she was influenced in leaving her seat by the acts and manner of the conductor while the car was slowing up, and going to the step, and standing there a moment for the car to stop, is not, it seems to us, to be determined by this court as matter of law, but a question of fact for the jury. Not only was she standing in the place where a jury would have a right to assume she went by the conduct of the conductor, but she was holding on to the rail, preparatory to alighting when the car should stop; and she had a right to assume that the movement of the car would be the ordinary one, viz. that when a passenger was invited or authorized to alight, and the car was slowing up for her to do so, it would not start with a sudden jerk. She testified that she was not injured while alighting or attempting to get off from the car while it was in motion, but that, being in a delicate condition, and therefore in no condition to jump off, she waited a moment for the car to come to a standstill, fearing that she might get injured. The reasonableness of this statement is apparent, and suggests prudence, if not more than ordinary care, upon her part; certainly not foolish rashness or negligence.

Respondent's counsel earnestly contends this case comes within the rule laid down in, and is controlled by that of, Saiko v. St. Paul City Ry. Co., 67 Minn. 8, 69 N. W. 473, and that under that decision the plaintiff herein cannot recover. This case differs from the Saiko case in one important respect. Saiko did not take hold of

the railing when he went upon the step of the car. It is stated in the opinion in that case:

"Nowhere does it appear that he made the slightest effort to steady or protect himself from any jerk or movement of the car by taking hold of the rails or any part of the car."

Ordinarily, and usually, a street car jerks to some extent in stopping and starting. It is the duty of a passenger to know this, and act accordingly, for the purpose of protecting himself from such a jerk at such a time; and, if he fails to take any reasonable precaution for that purpose, he is guilty of contributory negligence as a question of law. If he does take such precaution, and is thrown off by an extraordinary jerk, his contributory negligence is a question for the jury. Saiko made no effort to steady or protect himself. Plaintiff did so by holding on to the car rail for protection. In this case there was apparently but little, if any, danger to plaintiff in standing still for a moment on the steps of a slowly-moving car, protecting herself by holding on to the car rail while confidently believing the car would stop in a moment, and having the right to believe and assume that the movement of the car would be the ordinary one of safety and prudence, and not a sudden jerking of the car, whereby she was seriously injured. At least it was not error for the trial court to submit the question of her contributory negligence to the jury.

The weight of authorities seems to be greatly on the side of the proposition that a case of this kind should be submitted to a jury upon the question of contributory negligence on the part of the plaintiff. It is the duty of those in charge of a car to give passengers an opportunity to alight in safety, and a high degree of care in affording passengers an opportunity to do so is required. It was the duty of the defendant to stop the car, and not to start it, until the plaintiff had an opportunity to alight, and had alighted. And especially was it the duty of the defendant not to give the car a jerking movement after giving plaintiff an invitation to alight by ringing the bell, and slowing up the car, and while she was standing upon the car step, waiting to alight. While the weight of evidence was apparently on the side of defendant, yet there was a con-

flict of evidence as to the position of plaintiff, her acts in standing upon the platform and getting off; but we cannot hold that the evidence conclusively showed as a matter of law that plaintiff was guilty of contributory negligence. In the case of Watkins v. Birmingham, 120 Ala. 147, 24 South. 392, it was held that,

"Where a passenger notified the conductor where he wanted to alight, and, on approaching it, the train began to slow up, the question whether he was negligent by going on the platform steps preparatory to alighting, while the train was still in motion, was for the jury."

The facts in that case were analogous to those in this case. At the time he paid his fare he told the conductor that he desired to get off at Twenty-Fourth street, and when the train was between Twenty-Fifth and Twenty-Fourth streets he left his seat in the rear car, went to the back platform as the train slowed up for the west crossing, which was the proper side of the street on which to stop, and, after the engine and front car had passed over it at a speed of about three miles an hour, he got on the lower step, preparatory to stepping off, when the speed of the train was suddenly increased, or, as he testified, the car was jerked forward, and he fell to the ground, and received personal injuries. He was at the time holding on to the rear guard of the car with his right hand. Numerous authorities are cited in the opinion to sustain the law laid down in that case.

In Bowie v. Greenville, 69 Miss. 196, 10 South. 574, a passenger upon a street-railway car requested the car to stop, and, in the confident belief that it would, he got upon the lower step of the rear platform to be in a position to alight, when he was, by the negligence of the driver, thrown from the car, and injured; and it was held not demurrable as showing contributory negligence.

The case of Harmon v. Washington & Georgetown R. Co., 7 Mackey, 255, was another case analogous to the one under consideration, and the court gave this instruction:

"If the jury believe from the evidence that the conductor, at the request of the plaintiff, rang the bell to stop the car for him to get off, and that the car thereupon slowed, and the plaintiff went out on the platform, and, while the car was moving very slowly, stepped

down on the step of the car, to be in readiness to step off when the car should fully stop, and that, instead of stopping fully, the car moved suddenly forward, in consequence of the negligent act of the conductor or driver, and he was thereby thrown off and injured, it would be for the jury to say, under all the facts and circumstances of the case shown in evidence, whether the conduct of the plaintiff caused or contributed to his injury; and, if they further believe that the plaintiff did, under the circumstances, what an ordinarily prudent man would have done, then he was not guilty of contributory negligence, and would be entitled to recover."

A verdict was rendered for the plaintiff, and upon appeal to the United States supreme court the rule asserted in the instruction was affirmed. Washington & Georgetown R. Co. v. Harmon, 147 U. S. 571, 13 Sup. Ct. 557. The opinion was written by Chief Justice Fuller, and in referring to certain instructions in the case he says:

"The duty resting upon the defendant was to deliver its passenger, and that involved the duty of observing whether he had actually alighted before the car was started again. If the conductor failed to attend to that duty, and did not give the passenger time enough to get off before the car started, it was necessarily this neglect of duty that did the mischief. It was not a duty due to a person solely because he was in danger of being hurt, but a duty owed to a person whom the defendant had undertaken to deliver, and who was entitled to be delivered safely by being allowed to alight without danger. Viewed in this light, the instruction was unobjectionable. If the conductor negligently failed to observe whether plaintiff had alighted, or knowing that he had not, negligently started the car too soon, and in consequence of that, a sudden jerk of the car took place and threw him down and was the immediate cause of his falling, and the accident would not have happened but for that fact, we think it clear that such negligence as might be imputed to the plaintiff in being upon the step at all, could not, under the circumstances supposed, be properly held to have been contributory negligence. To hold so would be to determine that a carrier could defend his own negligence in the particulars named upon the ground that if the plaintiff had not been there he would not have been hurt. It may be said that he placed himself where he was in risk of falling off, but that was a risk he could not have anticipated as the result of a sudden start before he had got off, because he had a right to assume that the car would actually stop to allow him to get off, and if it had, as it should have done, upon the hypothesis of the instruction, no accident would have happened. Under the terms of the instruction the injury en-

sued directly from the defendant's negligence, and that was its proximate cause."

The vital questions of fact in this case were controverted upon the trial, and submitted to the jury, and it found in favor of the plaintiff.

We find no errors in the record, and the denial of defendant's motion for a new trial is affirmed.